IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LORI DUNCAN                    :    CIVIL ACTION
                               :    NO. 05-255
        Plaintiff,             :
                               :
    v.                         :
                               :
JO ANNE BARNHART,              :
COMMISSIONER OF SOCIAL         :
SECURITY,                      :
                               :
        Defendant.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    FEBRUARY 7, 2006

        Plaintiff, Lori Duncan, brings this action under 42
U.S.C. § 405(g) seeking judicial review of a final decision by
the Commissioner of the Social Security Administration denying
plaintiff's claim for disability insurance benefits.  Before the
Court are the parties' cross motions for summary judgment (docs.
no. 6 and 7), a Report and Recommendation of the Magistrate Judge
recommending that the Court grant plaintiff's motion and deny
defendant's motion (doc. no. 10), and defendant's objections to
the Magistrate Judge's Report and Recommendation (doc. no. 11).

        Commissioner has raised several objections to the
Magistrate Judge's Report and Recommendation.  She alleges that
the Magistrate Judge erred in determining that the Administrative
Law Judge's ("ALJ") opinion was not supported by substantial
evidence at steps four and five of the sequential evaluation.

First, the Commissioner notes that Drs. Nardella and Osterman, plaintiff's treating physicians, provided enough evidence for the ALJ to conclude plaintiff was not totally disabled, despite the physicians' ultimate conclusions that she was.  Second, the Commissioner argues that the ALJ did properly consider the vocational assessment of plaintiff by Dr. Walker.  Third, the Commissioner asserts that the record supports the ALJ's finding that plaintiff's allegations of pain improved after surgery and therapy.  Fourth, the Commissioner argues that the ALJ's use of the Medical Vocation Guidelines ("GRIDS") was proper, as plaintiff's nonexertional limitations were insufficient. Plaintiff did not respond to these objections.

I.   FACTS AND PROCEDURAL BACKGROUND

        Plaintiff suffers from bilateral carpel tunnel syndrome, right radial neuroma and severed tendons in her left hand.  Tr. at 45-46.  She sustained the damage to her right hand in October 1996 while delivering twins when a nurse attempted to insert an intravenous needle ("IV").[1]  Tr. at 71, 631.  After the injury to her right hand, plaintiff claimed limited use of that hand and began to rely more heavily on her left hand.  In

---

[1]Plaintiff filed a malpractice lawsuit for the injuries sustained to her right hand.  Much of the medical testimony submitted to the ALJ came from deposition testimony collected in the malpractice lawsuit.

September 1999, plaintiff injured her left hand when she broke a glass dish, severing tendons and nerves in her long and ring fingers. Tr. at 161-171. She complains of persistent pain and loss of use of both hands.

Plaintiff is a 42-year-old woman with a high school or high school equivalent education and one year of community college. Her past relevant work was as a claims processor, which involved extensive use of her hands. She worked for an insurance provider, collecting the medical documentation necessary to process an insurance claim. She described the activities involved as requiring her to write, type, lift books weighing five to ten pounds and sitting for long periods. Tr. at 628-29. She has not had meaningful gainful employment since her injury in 1996. She attempted to return to work on one occasion, but was unsuccessful because of her complaints of pain.

Plaintiff filed an application for disability benefits on July 2, 2001 which was denied. Tr. at 35-38. She then requested and received a hearing before an ALJ on February 11, 2003. The ALJ denied plaintiff's claim and the appeals council denied plaintiff's request for review. Before the Court is her appeal of the ALJ's decision. In accordance with the procedures adopted by the Court, the parties' motions for summary judgment were referred to a Magistrate Judge for report and recommendation.

II.  DISCUSSION

    A.  <u>Standard of Review</u>

        The Court's review of the Magistrate Judge's Report and Recommendation is de novo.  28 U.S.C. § 636(b).  Therefore, the Court "may accept, reject or modify, in whole or in part," the Magistrate Judge's findings and recommendations.  28 U.S.C. § 636(b)(1).

        In a hearing held before an ALJ, plaintiff was denied social security benefits.  The role of the Court is to determine whether the ALJ's decision is supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  "It is less than a preponderance of the evidence but more than a mere scintilla."  <u>Jesurum v. Sec'y of Health & Human Servs.</u>, 48 F.3d 114, 117 (3d Cir. 1995) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  The "administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests."  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981), <u>reh'g denied</u>, 650 F.2d 481 (3d Cir. 1981).

    B.  <u>Establishing Eligibility Under the Social Security Act.</u>

        To establish a right to disability insurance benefits, a claimant must show that she suffers from a disability as defined under the Social Security Act.  The Social Security Act

defines a disability as a medically determinable physical or
mental impairment that prevents the claimant from engaging in any
"substantial gainful activity" for a continuous twelve-month
period.  42 U.S.C. § 423(d)(1)(A).  The impairment must be so
severe that the claimant "is not only unable to do his [her]
previous work but cannot, considering his [her] age, education
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy."  Id. §
423(d)(2)(A).

        The Commissioner has established a five-step inquiry
for determining whether a claimant is eligible for disability
benefits under the Act.  To prevail, a claimant must establish
(1) that she is not engaged in substantial gainful activity, and
(2) that she suffers from a severe impairment.  See Jesurum, 48
F.3d at 117 (citing Bowen v. Yuckert, 482 U.S. 137, 140-41
(1987)).  If the claimant shows these two elements, the
Commissioner determines (3) whether the impairment is listed by
the Secretary as one creating a presumption of disability.  Id.
If the claimant's medical impairment is not "listed," the
claimant bears the burden of proving that (4) the impairment
nonetheless prevents her from performing work that she has
performed in the past.  Id.  The relevant inquiry is "whether the
claimant retains the residual functional capacity to perform
[her] past relevant work."  Fargnoli v. Halter, 247 F.3d 34, 39

(3d Cir. 2001).  If the claimant satisfies this burden, the
Secretary must grant her benefits unless the Secretary can
demonstrate (5) that there are jobs in the national economy that
the claimant can perform.  <u>Jesurum</u>, 48 F.3d at 117 (citing
<u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1985)).

     C.   <u>The ALJ's Decision.</u>

     The ALJ determined that plaintiff was not disabled
within the meaning of the Social Security Act.  At step four of
the inquiry, the ALJ found that plaintiff retained her residual
function capacity ("RFC") to return to her past relevant work.
Assuming, arguendo, that plaintiff could not return to her past
relevant work, the ALJ addressed step five of the inquiry to
evaluate whether there are jobs in the national economy that
plaintiff could perform.  The ALJ then employed the GRIDS to find
the existence of occupations in the national economy that
plaintiff's is capable of performing.  Therefore, the ALJ
determined that under step four or, in the alternative, step five
of the inquiry, plaintiff is not entitled to disability benefits.

     Plaintiff, according to the ALJ, is capable of
performing the full range of light work.  Tr. at 25.  Light work
consists of lifting not more than twenty pounds, frequent lifting
or carrying of objects up to ten pounds, and may require a good
deal of walking or standing, or sitting with some pushing and
pulling of arm or leg controls.  20 C.F.R. §§ 404.157(b) and

414.967(b).  Moreover, plaintiff's past relevant work as a claims
processor is classified as light work, as she testified that it
involves sitting and lifting books weighing not more than ten
pounds.  The ALJ determined, therefore, that plaintiff was able
to return to her past relevant work as a claims processor.  Tr.
at 26.

   D. <u>Application of the Substantial Evidence Standard.</u>

    The Magistrate Judge determined that the ALJ failed to
accord any weight to the opinion of plaintiff's treating
physician Dr. Osterman, that plaintiff could not perform her past
work.  In addition, the Magistrate Judge determined the ALJ did
not accord weight to the opinions of two other physicians, Drs.
Honish and Nardella, that plaintiff was totally disabled.  The
ALJ also, according to the Magistrate Judge, failed to properly
consider the opinions of the vocational evaluator or to properly
evaluate plaintiff's credibility about her own symptoms.
Finally, the Magistrate Judge concluded the ALJ improperly relied
on the GRIDS at step five of the inquiry because an ALJ cannot
use the GRIDS where a claimant presents competent evidence of
nonexertional limitations.  Plaintiff presented such evidence, in
the Magistrate Judge's opinion, and therefore the ALJ should have
at least addressed the plaintiff's nonexertional limitations.

    The Commissioner objects to these findings as follows,
arguing that there is substantial evidence to support the finding

of the ALJ.

       1.    <u>According improper weight to the physicians'</u>

                    <u>opinions.</u>

     The Commissioner objects to the Magistrate Judge's finding that the ALJ did not accord the proper wight to the opinions of Drs. Nardella and Osterman.  Dr. Nardella was plaintiff's treating physician for her right hand, which was injured in 1996 by an improperly inserted IV.  Dr. Osterman was plaintiff's treating physician for the injury to her left hand, which she injured with a broken dish in 1999.  Dr. Honish contributed medical opinions about causation in plaintiff's underlying malpractice lawsuit.[2]

     As the Magistrate Judge correctly notes, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)).  However, "a [naked] statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue."  <u>Adorno v. Shalala</u>, 40 F.3d 43, 47-48 (3d Cir. 1994).  "The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability [and i]n doing

---

     [2]The record contains only letters from Dr. Honish regarding causation and plaintiff's inability to work.  The record does not indicate whether Dr. Honish treated plaintiff for any injuries.

so, the ALJ must weigh the relative worth of a treating
physician's report against the reports submitted by other
physicians who have examined the claimant." Id.; see also
Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (stating that
if, however, an ALJ chooses to reject the opinion of the treating
physician, he is prohibited from making "speculative inferences
from medical reports and may reject a treating physician's
opinion outright only on the basis of contradictory medical
evidence and not due to his or her own credibility judgments,
speculation or lay opinion") (quotations omitted).

Section 404.1527 of Title 20 of the Code of Federal
Regulations provides a framework in which to analyze the weight
to be accorded a treating physician's opinions.  The treating
physician's opinion is given controlling weight where "the nature
and severity of [the claimant's] impairment(s) is well-supported
by medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other substantial
evidence in [the] case record. . . ."  20 C.F.R. §
404.1527(d)(2).

An examination of the opinions of Drs. Nardella and
Osterman within this framework reveals that there are proper
justifications for the ALJ's decision.  Although both physicians
state that plaintiff was totally disabled, the Commissioner
points out that their opinions were based primarily on

9

plaintiff's subjective complaints of pain.  Tr. at 540-41, 583-84, 586.  In addition, Dr. Nardella testified that a neuroma would not affect the motor function of plaintiff's hand.  Tr. at 589.  Dr. Osterman stated that plaintiff had normal objective diagnostic and laboratory findings despite her complaints of pain.  Tr. at 530-31.  Finally, Dr. Nardella determined plaintiff had no atrophy in her muscles to signal an inability to use her hand.  Tr. at 601.  These factors show that the ALJ's decision to deny plaintiff permanent disability benefits was based on substantial evidence.  To wit, the treating physicians' own reports contradicted their statements that plaintiff was disabled, as both Drs. Nardella and Osterman noted that plaintiff's test results were not consistent with her allegations of constant pain.  Tr. at 525-31, 586.

<u>2.   The vocational assessment by Dr. Walker.</u>

The Commissioner objects to the Magistrate Judge's finding that the ALJ "failed to properly consider Plaintiff's vocational assessment" done by Dr. Walker.  Def.'s Obj. at 5. Through his vocational assessment of plaintiff, Dr. Walker determined that plaintiff was disabled.  Tr. at 180.  His opinion was based on, <u>inter alia</u>, reports submitted by plaintiff's physicians, copies of plaintiff's tax returns, hospital and billing records, plaintiff's deposition transcript and notes of daily activities taken by plaintiff.  Tr. at 180.  His only

10

direct observations of plaintiff were as she filled-out questionnaires at his office.  Tr. at 185 (noting she "massaged her right hand" and "verbalized complaints of right-hand pain").

An opinion that plaintiff cannot perform her past relevant work is an administrative finding reserved to the Commissioner and is not a medical opinion.  See S.S.R. 96-5p. This was the basis of the ALJ's rejection of Dr. Walker's opinion, i.e. that "Dr. Walker's opinion does not hold controlling weight."  Tr. at 23.  The Magistrate Judge asserts that this is an improper basis to reject the opinion of a witness who has made direct observations of the claimant.  The ALJ had other evidence with which to reject the opinion of Dr. Walker, namely that he made no direct observations of plaintiff aside from his single meeting with her.  Therefore, the ALJ correctly stated that the opinion of Dr. Walker did not have controlling weight and properly could be considered as less important to the ALJ's final determination of disability.

3.   Plaintiff's allegations of pain and plaintiff's credibility.

The Commissioner objects to the Magistrate Judge's determination that the ALJ's finding of improvement is "highly questionable in light of the record."  Mag. R. & R. at 16. Although plaintiff consistently complained of pain, Dr. Nardella saw signs of improvement during the course of treating plaintiff.

11

Dr. Nardella noted that plaintiff's condition had improved with occupational hand therapy and desensitizing, and her overall sensitivity had lessened by almost eighty percent since her first visit with him.  Tr. at 591-92.  Most importantly, there was medical testimony that plaintiff's carpal tunnel surgery was successful.  Tr. at 497.

        The ALJ was permitted to consider the medical opinions as a whole, rather than focus on the overall finding of disability that was largely based on plaintiff's consistent subjective complaints.  See Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999).  In Plummer, the claimant also suffered from carpel tunnel syndrome and complained of sporadic pain that prevented her from performing fine finger functions.  Id. at 430. Her treating physician opined that she could not perform fine finger manipulation.  Id. at 430-31.  The Third Circuit determined that there was substantial evidence for the ALJ's decision to limit the probative weight of the treating physician's testimony because it was based "primarily on claimant's subjective complaints."  Id. at 430 (quoting ALJ's opinion).   Here, there was substantial evidence in the medical records, taken as a whole, that plaintiff's condition improved over time such that she was not disabled.

        Moreover, plaintiff's credibility was at issue because on one hand she complained of pain and an inability to use her

12

hands, and on the other hand she testified that she performed
household chores and drove her children to school.  The
Magistrate Judge determined that the ALJ's "credibility
component" of his opinion was "problematic because it was based
on her ability to perform daily tasks and a finding of
improvement."  Mag. R. & R. at 16 (citing S.S.R. 96-7p).

            When assessing a claimant's credibility, the ALJ must
consider the following factors in addition to the objective
medical evidence: (1) daily activities; (2) location, duration,
frequency and intensity of pain; (3) things that aggravate the
symptoms; (4) the type, dosage and effects of any medication; (5)
treatment received other than medication; (6) any measures other
than treatment used to relieve pain; and (7) any other factors
concerning claimant's functioning or restriction based on pain.
See S.S.R. 96-7p.  Here, the ALJ noted the scope of the
plaintiff's daily activities as important factors in his
credibility determination, as plaintiff testified that she is
able to cook, clean, shop for groceries, dial a touch-tone
telephone, use a remote control, load the washer and dryer and is
usually able to tie her shoes.  Tr. at 24 (ALJ opinion).  The
activities show that plaintiff can perform handling and fingering
activities.  Tr. at 24.  Although not explicitly stated in the
ALJ's opinion, those are daily activities that can be considered
under S.S.R. 96-7p to assess a claimant's credibility when there

13

are subjective allegations of pain and symptoms.

Moreover, the ALJ noted that plaintiff showed effective pain management with medication.  To relieve her pain, plaintiff took "only Excedrin at night and Celebrex during the day."  Tr. at 24.  Moreover, Drs. Nardella and Osterman noted an improvement in plaintiff's pain in 1999 and 2000.  Tr. at 24.  This suggests that the level of treatment is inconsistent with the level of complaints of pain, a factor that the ALJ is permitted to consider under S.S.R. 96-7p.

Therefore, the ALJ had substantial evidence before him with which he could reject plaintiff's subjective allegations of pain consistent with S.S.R. 96-7p.  Moreover, plaintiff's own admissions about her daily activities support that conclusion. In addition, the objective medical evidence supports the ALJ's conclusion as noted in the above discussion of the medical opinions of plaintiff's treating physicians.

### 4.   Use of the GRIDS.

The Commissioner objects to the Magistrate Judge's finding that the ALJ's use of the GRIDS at step five was improper.  The Magistrate Judge is correct in stating that, at step five, the ALJ is allowed to use the GRIDS if there are exertional limitations on the claimant's ability to work.  Mag. R. & R. at 16.

Exertional limitations affect one's ability to meet the

14

strength demands of a job, including sitting, standing, walking, lifting, carrying pushing or pulling.  20 C.F.R. § 404.1659a(b). The GRIDS directly apply to exertional limitations.  Id. Nonexertional limitations are those which affect anything other than strength demands, including nervousness, anxiety or depression, difficulty remembering instructions, paying attention or concentrating, visual or auditory difficulties, or difficulty performing manipulative or posterior functioning such as reaching and handling.  Id. § 404.1659a(c).  The GRIDS do not apply if the impairments only affect nonexertional limitations.  Id.  If there is a combination of both exertional and nonexertional limitations, the GRIDS will be applied if a rule directs a conclusion that the impairment affects strength, otherwise the rules provide a framework to guide the decision.  Id. § 404.1659a (d).

Here, the Commissioner asserts there were exertional limitations from plaintiff's carpal tunnel syndrome because she "alleged strength related complaints."  Def.'s Obj. at 10. Namely, those limitations were that she lacked the hand strength needed to hold, grip and lift without pain.  Tr. at 634-36 (plaintiff's testimony before the ALJ).  The ALJ concluded that the nonexertioanl limitations were minimal because plaintiff demonstrated manual dexterity in her ability to perform daily household chores.  Therefore, use of the GRIDS was proper because

15

there were exertional limitations on plaintiff's ability to work.

Moreover, the Third Circuit has recently acknowledged that "the Agency has used, and the courts are thus directed to employ, the grids as a framework when nonexertional limitations are also at issue." Allen v. Barnhart, 417 F.3d 396, 401 (3d Cir. 2005). In Allen, the Third Circuit determined that it was not error for the ALJ to apply the GRIDS without the testimony of a vocational expert. Id. at 403-04. Therefore, the ALJ's use of the GRIDS at step five was correct, despite the existence of nonexertional limitations. Id. at 404 ("from the standpoint of common sense, the grids' use for exertion level are not totally irrelevant if a claimant has only a nonexertional impairment, for there would still be an applicable exertional level, i.e., the claimant could do work requiring heavy exertion").

III. CONCLUSION

Pursuant to 42 U.S.C. § 405(g), there is substantial evidence to support the ALJ's decision to deny plaintiff social security benefits. Although plaintiff's treating physicians ultimately concluded that she was disabled, their opinions were based on her subjective complaints of pain and their testimony showed that plaintiff's condition improved with treatment. The ALJ was not required to afford any greater weight to the opinion of the vocational expert. Moreover, there was considerable

16

evidence to support a finding that plaintiff lacked credibility. Finally, the ALJ was permitted to use the GRIDS despite the existence of evidence concerning nonexertional limitations.  The Commissioner's objections to the Magistrate Judge's Report and Recommendation will be sustained.  For the foregoing reasons, the Court will grant the Commissioner's motion for summary judgment and deny plaintiff's motion for summary judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI DUNCAN | : | CIVIL ACTION |
| | : | NO. 05-255 |
|      Plaintiff, | : | |
| | : | |
|   v. | : | |
| | : | |
| JO ANNE BARNHART, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
|      Defendant. | : | |

**ORDER**

**AND NOW**, this **7th** day of **February, 2006,** upon consideration of the parties' cross-motions for summary judgment, and after review of the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi (doc. no. 10) and Commissioner's Objections thereto (doc. no. 11), it is hereby **ORDERED** for the reasons provided in the accompanying memorandum that:

     1.   Defendant's Objections (doc. no. 11) are **SUSTAINED**;

     2.   Plaintiff's motion for summary judgment (doc. no. 6) is **DENIED**; and

     3.   Defendnat's motion for summary judgment (doc. no. 7) is **GRANTED.**

18

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of defendant and against plaintiff.

**AND IT IS SO ORDERED.**

<u>S/Eduardo C. Robreno</u>
**EDUARDO C. ROBRENO, J.**